UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN DOE,

        Plaintiff

  v.

WILLIAMS COLLEGE,

        Defendant

No. 3:20-cv-30024

## DEFENDANT'S ANSWER AND JURY DEMAND

Defendant Williams College answers the correspondingly numbered paragraphs of the Complaint as follows.

### Nature of the Action

1. Denied.

2. The College admits that these introductory paragraphs summarize Doe's allegations. Otherwise denied.

3. The College admits that these introductory paragraphs summarize Doe's allegations. Otherwise denied.

4. The College admits that these introductory paragraphs summarize Doe's allegations. Otherwise denied.

5. The College admits that these introductory paragraphs summarize Doe's allegations. Otherwise denied.

### Jurisdiction and Venue

6. The College admits that the Complaint purports to allege the breach of contractual and other obligations and the violation of Title IX. Otherwise denied.

7. The College admits that it is located in Massachusetts. The College lacks information sufficient to form a belief as to the remaining allegations of this paragraph.

8. The College does not contest that Doe seeks to recover more than $75,000. Otherwise denied.

9. The College does not contest that this Court has subject matter jurisdiction.

10. The College does not contest that this Court is an appropriate venue.

## Parties

11. The College admits that Doe was a full-time student at the College in 2016 and 2017, that he presented a strong academic record in high school, and that he did well academically at the College. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

12. Admitted.

## Facts

13. The College admits that on November 19, 2016, Doe and Smith had dinner and went for a walk and that Smith previously told friends that she liked Doe. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

14. The College admits that after their walk, Doe and Smith returned to Doe's dorm room. The College admits that Doe reported to the investigator that Smith was eager to go to Doe's dorm room and that Doe asked Smith if he could kiss her, although Smith disputed those claims. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

15. The College admits that Doe reported to the investigator that Smith responded that he could kiss her and that they engaged in consensual touching, although Smith disputed

those claims. The College admits that both students remained fully clothed. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

16. The College admits that Doe reported to the investigator that Smith consented to the kissing and touching, although Smith disputed that claim. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

17. Admitted.

18. Admitted.

19. The College admits the allegations in the first, second, third, and fifth sentences of this paragraph. The College lacks information sufficient to form a belief as to the truth of the allegations of the fourth sentence of this paragraph.

20. The College admits that Doe reported to the investigator that he told Smith he was not emotionally available, although Smith disputed that claim. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

21. The College admits that Doe and Smith did not have sex or remove their clothes. The College admits that Doe reported to the investigator that he asked Smith if he could kiss her, that she responded that he could, that he asked her before initiating any new touching, and that he obtained her consent, although Smith disputed those claims. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

22. The College admits that Doe reported this account to the investigator, which Smith disputed. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

23. The College admits that Doe reported to the investigator that Smith accused him of being "emotionally manipulative" and "culturally insensitive" and that Doe reported that Smith informed him that she had people ready to hurt him. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

24. The College admits that Doe spoke with Dean Pretto; she referred Doe to Ms. Bossong, who is the Director of Sexual Assault Prevention and Response and in that capacity can serve as a confidential resource; Doe wrote a lengthy email to Ms. Bossong, not confidentially but with a cc to Dean Pretto, in which he described his version of various events; and Ms. Bossong responded that she was not able to help him in this particular circumstance, while also identifying other resources on campus available to Doe. Otherwise denied.

25. The College admits that JAs are Williams juniors who volunteer to live with first-year students and help them acclimate to college life and that Smith's JA reached out to Ms. Bossong on Smith's behalf. Otherwise denied.

26. The College admits that on or about April 10, 2017, Smith made a complaint against Doe, accusing him of sexual misconduct in both their November and January interactions. Otherwise denied.

27. The College admits that during the 2016-2017 school year, it had an Investigation and Adjudication Process for Sexual Assault, Sexual Exploitation, Stalking, Relationship Abuse, which governed the College's investigation and adjudication of all allegations of sexual misconduct including sexual assault against Williams students. The College denies that Exhibit A is the version of the Process that applied in 2016-2017 and denies any remaining allegations of this paragraph.

28. Admitted, except that there was no printed student handbook at that time.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted with respect to the panel's determination on responsibility. Otherwise denied.

37. Admitted with respect to the panel's determination on responsibility. Otherwise denied.

38. Admitted.

39. Admitted.

40. The College admits that the definition of consent in the Code of Conduct included the quoted language, along with other language. Otherwise denied.

41. Admitted.

42. Admitted.

43. The College admits that the letter did not provide details about the sexual interactions that allegedly had occurred and did not attached a copy of any written complaint, although the letter also identified a dean who had been assigned to support Doe and answer any questions he might have, and the letter also specifically invited Doe to contact that dean if he had any questions. The College admits that a copy of the Code of Conduct was attached to the letter. Otherwise denied.

44. Admitted.

45. The College admits that it did not give Doe additional information about the allegations against him before he was scheduled to appear for an interview with Ms. Kurker, although it had invited him to ask any questions he might have at any time.  Otherwise denied.

46. Admitted.

47. The College admits that at Doe's first interview on April 27, 2017, Ms. Kurker offered Doe the opportunity to identify possible witnesses; told Doe, "I tend to only interview people who have heard it from the people involved"; and told Doe she was "mostly interested… in speaking to anyone who [he] talked to about what occurred in Thanksgiving and January," but that "[he] could tell her whether there are other things."  Otherwise denied.

48. The College admits that Doe and Dean Sandstrom exchanged emails on May 3, 2017, as alleged, although Dean Sandstrom's response also indicated that Doe could identify potential witnesses to Dean Sandstrom, who then could contact any potential witnesses to see if they would be willing to speak with the investigator, who then could determine if the potential witness had useful information.  The College otherwise lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

49. The College admits that both Doe and Smith identified possible witnesses to Ms. Kurker and that Doe identified four witnesses.  Otherwise denied.

50. The College admits that Ms. Kurker never expressly invited Doe to submit questions for the witnesses, although he was free to do so under the policy and Dean Sandstrom expressly invited him to suggest questions in his response to the draft report.  Otherwise denied.

51. The College admits that Doe was not permitted to be present for the interviews of Smith or any witnesses and that Kurker gave Doe information about Smith's statements. Otherwise denied.

52. Admitted.

53. The College admits that one witness, whom Doe had identified, declined to be interviewed by Ms. Kurker and that Dean Sandstrom had forbidden him to contact witnesses directly. The College otherwise lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

54. Admitted.

55. Admitted.

56. Admitted.

57. The College admits that during the interview, Ms. Kurker said she would not share with Doe what Smith's witnesses had stated during their interviews where there was nothing for Doe to respond to. Otherwise denied.

58. The College admits that the Process stated that Doe would be allowed to propose questions for witnesses. Otherwise denied.

59. Admitted.

60. Denied.

61. The College admits that Doe was provided an opportunity to submit comments to the draft investigation report and that he identified what he believed were significant facts that the investigator did not include. Otherwise denied.

62. Admitted.

63. Admitted.

64. Admitted.

65. The College admits that Doe requested a number of other exhibits be removed from the report. Otherwise denied.

66. The College admits that Doe asked that a series of texts be removed from the exhibits to the report, and that these texts reflected a conversation between Smith's friend and her friend's boyfriend in which Smith's friend recounted what Smith had told her about the assault. Otherwise denied.

67. The College admits that Doe requested that Smith's JA's notes be removed from the exhibits to the report; according to Doe, Smith's JA had pushed Smith to call the interactions with Doe "sexual assault"; Smith's JA indicated to the investigator that she created the notes to document the chronology and her conversations with Smith about the assault; in the notes, JA described Doe as a "smooth talker" and Smith as a "very strong woman" and said that the November interaction with Doe "sent up red flags." Otherwise denied.

68. The College admits that Dean Sandstrom denied Doe's request to remove additional exhibits. Otherwise denied.

69. The College admits that according to the draft report, a number of Smith's friends told the investigator that Smith was motivated to report Doe because she did not think he was deserving of participating in a prestigious program; Smith denied that Doe's selection for the program was her motive for pursuing a formal complaint; and Dean Sandstrom instructed the investigator to remove all references to the program from the final report because including those references would require including additional information relating to the program that would be prejudicial to Doe. Otherwise denied.

70. The College denies that the program is an "honor." Otherwise admitted.

71. Denied that it was Dean Pretto who required Doe to remove the references from his response; it was Dean Sandstrom, who allowed the information that Doe sought to rely on to be included in the report itself. Otherwise admitted.

72. Admitted.

73. Admitted.

74. The College admits that Smith's response to the report referenced the notes that her JA had provided and stated that the panel should refer to her three interviews and those notes "to precisely understand my truth." The College admits that the investigator, Ms. Kurker, was the only representative of the College who spoke directly to Doe, Smith, or any witnesses for purposes of the investigation. The College admits that the final report did not contain any information about the parties' demeanor during their interviews, their motives (if any) to make false statements, or the consistency (or lack thereof) between their accounts and their prior statements. Otherwise denied.

75. Denied.

76. Admitted.

77. Admitted.

78. Denied.

79. The materials, among many other things, reference one researcher's model, which posits that some acts of sexual assault can result from the confluence of two pathways – the impersonal sex pathway and the hostile masculinity pathway – the latter of which combines two interrelated ideas: an insecure, defensive, hypersensitive, and hostile-distrustful orientation, especially toward women, and gratification from controlling or dominating women. The College admits that the slides attached to the Complaint contain the quoted language. Otherwise denied.

9

80. The College admits that the materials indicate that offenders who are rapists are intentional in their behavior – i.e., rapes are intentional acts – and that some rapists tend to mistrust women's communications and to perceive them as hostile. Otherwise denied.

81. The College admits that the presenter's notes to the training materials state that the Code does not weigh in on the intent of the perpetrator and that the Code of Conduct, in relation to sexual assault, focuses on whether the respondent acted with or without the other party's effective consent. Otherwise denied.

82. The College admits that the materials attached to the Complaint discuss traumatic memory. Otherwise denied.

83. Denied.

84. Admitted.

85. Admitted.

86. Admitted.

87. Admitted.

88. The College admits that the panel relied primarily on certain evidence, which the finding letter describes. Otherwise denied.

89. The College admits that in connection with the panel's conclusion that Smith did not convey affirmative consent to the intimate kissing and touching that occurred on January 11, 2017, the panel gave weight to the fact that Smith came to view the November incident as non-consensual, among other factors.

90. The College admits that the panel noted that Smith indicated discomfort after the November incident, including but not limited to the indication she gave in a communication to

Doe that she valued the emotional acts of the relationship over the physical ones. Otherwise denied.

91. The College admits that the finding letter does not reference this additional language in Smith's communication. Otherwise denied.

92. The College admits that witness statements were among the evidence the panel considered. Otherwise denied.

93. The College admits that Doe's email to Ms. Bossong was among the information on which the panel relied in concluding that Smith told Doe on January 11 that she felt Doe had mistreated her on the prior occasion. Otherwise denied.

94. Denied.

95. The College admits that the panel concluded that Smith expressed a clear "no" to several of his overtures during the January 2011 encounter. The College admits that Doe's account was as alleged, which Smith disputed. Otherwise denied.

96. The College admits that the Code of Conduct does not categorically forbid a student from asking more than once if their partner wants to engage in sexual activity, and that the Code does not prohibit sexual activity as to which all parties affirmatively consent. Otherwise denied.

97. Admitted.

98. The College admits that the panel did not find a preponderance of evidence to support Smith's assertion that Doe engaged in forcible sexual contact over her verbal objections, while it did credit her account that Doe engaged in sexual contact without her affirmative consent. Otherwise denied.

99. The College denies that the panel took no note of evidence in the report, which speaks for itself, and denies any remaining allegations of this paragraph.

100. Denied.

101. The College admits that pursuant to the College's Process, after the finding of responsibility, Doe was given the opportunity to address the hearing panel regarding the sanction for his conduct. Otherwise denied.

102. Admitted.

103. Admitted.

104. Admitted.

105. Admitted.

106. Admitted.

107. The College admits that Doe submitted his appeal to Vice President Haynes on September 15, not November 15, 2017.

108. The College admits that Doe's appeal made these arguments. Otherwise denied.

109. Admitted.

110. The College denies that Doe's permanent educational record will reflect the hearing panel's finding that he was responsible for non-consensual sexual touching. The College lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

111. Denied.

112. The College lacks information sufficient to form a belief as to Doe's career plans. Otherwise denied.

113. The College lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

114. The College lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

115. The College denies that Doe has been shunned or castigated or that he has feared for his safety on campus as a result of the College's conduct. The College lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

116. The College lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

117. The College admits that Doe complained to Dean Sandstrom that Smith was sharing information he considered to be false; that Doe met with Ms. Camacho, the Title IX Coordinator; and that the College took no action against Smith. Otherwise denied.

118. The College lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

119. The College lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

120. The College lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

121. The College lacks information sufficient to form a belief as to the truth of the allegations in this paragraph.

122. The College admits that as a result of Doe's suspension, he was denied a study abroad opportunity. Otherwise denied.

## Count I
## Breach of Contract

123. The College incorporates its responses to the paragraphs above.

124. The College admits that Doe had a contractual relationship with the College and that students who meet all the requirements for graduation, including those imposed under the Code of Conduct, are awarded degrees. Otherwise denied.

125. The College admits that Doe reasonably could expect that with respect to disciplinary matters, the College would provide a "prompt, fair and impartial investigation and resolution," would substantially follow its own rules, and would not act arbitrarily or capriciously. Otherwise denied.

126. Admitted.

127. Admitted.

128. Admitted.

129. The College admits that the Process required the hearing panel to impartially apply the preponderance of the evidence standard to the question whether the complainant provided affirmative consent to the sexual activities at issue at the time they occurred. Otherwise denied.

130. The College admits that the Process provided that "the Dean will also ensure that the report does not contain material that is inadmissible in the decision process, such as irrelevant prior sexual history." Otherwise denied.

131. Denied.

132. Denied.

133. Denied.

## Count II
## Breach of Covenant of Good Faith and Fair Dealing

134. The College incorporates its responses to the paragraphs above.

135. The College admits that an implied covenant of good faith and fair dealing applies to contracts in Massachusetts.

136. Denied.

137. Denied.

## Count III
## Title IX (20 U.S.C. § 1681)

138. The College incorporates its responses to the paragraphs above.

139. Denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

## AFFIRMATIVE DEFENSES

1. Doe's claims are barred as a matter of law to the extent he cannot prove any one or more of the elements of those claims.

2. Doe's contract claims are barred by his own breach of contract.

3. Doe's claim for breach of the implied covenant of good faith and fair dealing is barred to the extent it seeks to establish obligations different from or in addition to those established in the parties' contract.

4. Doe's contract claims are barred to the extent he seeks to recover damages for reputational harm, which are not recoverable in contract except in limited circumstances not present in this case.

5. Doe's claims are barred by the doctrine of waiver to the extent he failed to avail himself of procedural options available to him.

6. Doe's claim for injunctive relief is barred to the extent that Doe has an adequate remedy at law.

## JURY DEMAND

Williams College demands a trial by jury on all claims so triable.

WILLIAMS COLLEGE,

/s/Elizabeth H. Kelly
Daryl J. Lapp (BBO No. 554980)
   daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
   liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA  02199

April 7, 2020                617.230.0100

## Certificate of Service

I certify that on April 7, 2020, this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

/s/ Elizabeth H. Kelly
Elizabeth H. Kelly