**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action 20-30024-KAR |
| | ) | |
| | ) | |
| WILLIAMS COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY
QUESTIONS OF LAW TO THE MASSACHUSETTS SUPREME JUDICIAL COURT**

Plaintiff John Doe ("Plaintiff" or "Doe") hereby requests that this Honorable Court

certify one or more questions of law to the Massachusetts Supreme Judicial Court ("SJC"),

pursuant to Supreme Judicial Court Rule 1:03, as further set forth herein.

**INTRODUCTION/PROCEDURAL POSTURE**

Doe filed the Complaint in this matter against Defendant Williams College ("Williams")

because he was unfairly found responsible and suspended from Williams for an allegation of

non-consensual sexual contact. Each of his three claims asserts that Williams conducted a flawed

disciplinary process and/or deprived Doe of basic fairness. (*See* Complaint ¶¶ 131-32, 136, 139.)

The Defendant's Motion for Summary Judgment is scheduled for a hearing on October 27, 2021.

It is clear from the briefing that a major area of contention will be what Massachusetts law does

or does not require under the doctrine of "basic fairness," a question on which the Supreme

Judicial Court ("SJC") has provided little guidance, and none in over twenty years. *See Doe v.*

*Trs. of Boston College*, 942 F.3d 527, 533-36 (1st Cir. 2019) (*Boston College II*); *Schaer v.*

*Brandeis Univ.*, 432 Mass. 474, 481 (2000). Several judges of this Court have applied very

1

different understandings of basic fairness, creating substantial uncertainty about what state law requires of a university. *Compare Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 602 (D. Mass. 2016) (Saylor, J.) (interpreting basic fairness to require rigorous inquiry into both procedural and substantive aspects of disciplinary proceeding) *with Sonoiki v. Harvard Univ.*, No. 19-cv-12172, 2020 WL 3416516, *10 (D. Mass. June 22, 2020) (Casper, J.) ("a disciplinary decision must be arbitrary or capricious or made in bad faith to violate basic fairness"). The scope of the "basic fairness" requirement will be important, if not dispositive, for at least two of Doe's claims. Because only the SJC can provide a definitive answer to this question, Plaintiff requests that this Court certify one or more of the following questions to the SJC.

## QUESTIONS TO BE CERTIFIED

1. Where a university student is accused of sexual misconduct and the resolution of the allegations requires determination of the credibility of the complainant, respondent, and/or witnesses, does "basic fairness" in a campus disciplinary proceeding, *see Schaer v. Brandeis Univ.*, 432 Mass. 474, 481 (2000), require that those making credibility judgments have an opportunity to question relevant individuals personally rather than judging credibility solely on a written record?

2. Does "basic fairness" require that a university comply with all applicable federal and state laws and regulations in adjudicating disciplinary complaints of sexual misconduct?

3. What requirements does the obligation of "basic fairness" impose on university disciplinary proceedings beyond compliance with established processes and procedures?

4. Has the Defendant demonstrated an absence of genuine disputes of material fact concerning Counts I and II of the Complaint to the extent they are based on a violation of "basic fairness?"

**ARGUMENT**

I.    <u>This Court Should Certify Questions of Law Concerning the Scope of Basic Fairness</u>

<u>Under Massachusetts Law to the Supreme Judicial Court.</u>

The Court has the discretion to certify questions of state law to the SJC if there are

questions of Massachusetts law "which may be determinative of the cause… as to which it

appears to the certifying court there is no controlling precedent in the decisions of" the SJC. SJC

Rule 1:03(1). Legal issues may be "determinative" even if they may not dispose of all claims in a

matter. *See In re Engage, Inc.*, 544 F.3d 50, 53 & n.5 (1st Cir. 2008) (discussing possibility that

certified questions could resolve only a portion of the case); *Easthampton Sav. Bank v. City of*

*Springfield*, 736 F.3d 46, 50 (1st Cir. 2013) (certifying questions of state law, even though a

federal claim remained, because "only a decision based on state law… will give [plaintiffs] the

full measure of relief they seek"). There is "no controlling precedent," and therefore certification

is appropriate, where a case presents "a close and difficult legal issue," *Engage, Inc.* at 53,

meaning that "the course that the state court would take is not reasonably clear." *Easthampton*

*Sav. Bank* at 51. A court should exercise its discretion in favor of certification where "the

answers to the[] questions may hinge on policy judgments best left to the Massachusetts court

and will certainly have implications beyond the[] parties." *Engage, Inc.* at 53. Each of these

factors weighs in favor of certifying appropriate questions to the SJC concerning the state

requirement of basic fairness in university disciplinary proceedings for sexual misconduct.

a.   The Scope of Basic Fairness May Be Determinative of the Case

Counts I (Breach of Contract) and II (Implied Covenant of Good Faith and Fair Dealing) each raise issues of basic fairness in Williams' disciplinary process.[1] If the SJC decides that basic fairness requires university decision-makers to make credibility determinations only after hearing personally from the parties or key witnesses, judgment in Doe's favor would be required on one or both claims, leaving only the question of gender bias under Title IX for resolution by this Court. If the SJC's view of basic fairness is more limited, that could be determinative of Count II and a significant portion of Count I, allowing this Court to focus on the explicit promises in Williams' policies and the Title IX claim. Either way, the issue of state law would resolve a substantial part of this case.

And at a more fundamental level, the questions of basic fairness will determine a significant portion of the relief Doe seeks. If Doe prevails on a portion of his contract claim or on his Title IX claim, he might get an order that Williams expunge his disciplinary record and impose discipline only consistent with the policies and procedures to which it agreed, and without discriminating on the basis of sex. But a holding that the Williams procedures violated basic fairness would require Williams to provide a process that comports with the fairness requirements set out by the SJC, not just what was included in its Code of Conduct at a certain point in time.[2] The First Circuit has limited the ability of this Court to anticipate developments in

---

[1] The First Circuit has held that the obligation of basic fairness may arise under explicit contractual promises by a university or under the implied covenant of good faith and fair dealing. *See Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 87-88 (1st Cir. 2018) (*Boston College I*). Since the Court has not yet determined whether language in the Williams Code of Conduct constitutes a "promise[ of] no less than basic fairness," *id.* at 88, it is unclear at this point whether the basic fairness issue falls under Count I or Count II.

[2] In compliance with federal regulations under Title IX, Williams currently employs a disciplinary process for certain sexual assault allegations that includes a live hearing. *See* Williams College, *Sexual Misconduct Procedures Including Title IX Sexual Harassment*

the understanding of basic fairness until the SJC has weighed in. *See Boston College II* at 533-

36. Accordingly, Doe cannot secure "the full measure of relief" he seeks without certification.

*See Easthampton Sav. Bank*, 736 F.3d at 50.

      b.   There Is No Controlling Precedent from the SJC, and Federal Courts Have
           Reached Divergent Conclusions on This Issue

Since the SJC held in 2000 that a university must comply with the reasonable

expectations of students based on its policies and must also provide basic fairness, *see Schaer*,

432 Mass. at 478, 481, it has not decided a case in which the scope of basic fairness for an

accused student was at issue. There have been many important developments in the law of

student discipline since 2000, particularly with respect to allegations of sexual misconduct.

Among other things, in 2011, the U.S. Department of Education issued a "Dear Colleague"

Letter demanding that universities "make it easier for victims of sexual assault to make and

prove their claims and for the schools to adopt punitive measures in response," on pain of loss of

federal funding. *See Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 572 (D. Mass. 2016). A

different section of the Department of Education promulgated rules that became effective in

2015 requiring "transparency," "timely and equal access" to relevant evidence, and the right to

be accompanied by an advisor of one's choice, including an attorney, in campus disciplinary

proceedings involving allegations of sexual assault. *See generally* 34 C.F.R. § 668.46(k). And

last year, the Department of Education issued regulations under Title IX that included, among

other things, numerous "due process protections for respondents accused of sexual harassment."

*Victim Rights Law Center v. Cardona*, No. 20-11104-WGY, 2021 WL 3185743, *2 (D. Mass.

---

*Adjudication Process*, *available at* https://titleix.williams.edu/files/2021/08/Sexual-Misconduct-Title-IX-Sexual-Harassment-Adjudication-Process-August-2021-.pdf, at 1, 11 (last visited Sept. 27, 2021).

July 28, 2021). In addition to these developments at the federal level, earlier this year the Massachusetts legislature passed "An Act Relative to Sexual Violence on College Campuses," Mass. Acts 2020, ch. 337, which imposed new requirements on Massachusetts universities responding to allegations of sexual misconduct effective August 1, 2021, including a presumption that an accused student is not responsible, a requirement that the accused student be given notice of "a specific statement of which policies were allegedly violated and by what actions," and a mandate that both the accusing and accused students be provided with "the institution's policies regarding the submission and consideration of evidence that may be used during a hearing or disciplinary proceeding." *See* Mass. Gen. Laws ch. 6, § 168E(b).

Courts considering the scope of basic fairness have not had the benefit of the SJC's guidance concerning the policy implications of changes in society generally or the shifts in the legal landscape concerning universities' responses to allegations of sexual misconduct. Different federal courts have taken different approaches. In a highly influential and comprehensive opinion in 2016, Judge Saylor held that basic fairness includes both procedural and substantive components, and that although a private educational institution's disciplinary processes need not resemble a civil or criminal trial, withholding procedural protections that are traditional in the courts can amount to a deprivation of basic fairness. *See Doe v. Brandeis Univ.*, 177 F. Supp. 3d at 601-03, 607-08. Among the rights not provided to the plaintiff in *Brandeis*, which Judge Saylor found relevant to basic fairness, were failure to provide specific notice of the allegations at the outset of proceedings, lack of an opportunity to confront or cross-examine the complainant or witnesses, and inability to appeal on the basis that the decision was incorrect or unsupported by the evidence, all of which were also present in this case. *See id.* at 603-05, 607. In contrast, other judges of this Court have understood basic fairness more narrowly, with one decision

seeming to equate basic fairness with good faith, without a close examination of the procedures

used: "a disciplinary decision must be arbitrary or capricious or made in bad faith to violate basic

fairness." *Sonoiki v. Harvard Univ.*, No. 19-cv-12172, 2020 WL 3416516, *10 (D. Mass. June

22, 2020) (Casper, J.)). *Compare Doe v. Williams College*, No. 16-30184-MGM *20 (Mar. 29,

2021) ("To meet the required standard [of basic fairness], Colleges must follow the rules they

establish for themselves….") *with Boston College II*, 942 F.3d at 535 (noting the lack of any

contention that "a school's mere adherence to its policies itself resolves a basic fairness claim").

These interpretations are difficult to reconcile. But the First Circuit has not resolved the

discrepancy, other than to caution District Courts not to go beyond established state law on this

issue. *See Boston College II* at 535-36. The scope and contours of basic fairness represent "a

close and difficult legal issue," *Engage, Inc.*, 544 F.3d at 53, on which certification is

appropriate.

      c.   <u>The First Circuit Has Determined That the Requirements of Basic Fairness</u>
            <u>Present a Policy Issue for the SJC and State Legislature</u>

      The First Circuit has held that a court should exercise its discretion in favor of

certification when the legal question involves policy judgments better considered at the state

level. *See Engage, Inc.*, at 53. That is undoubtedly the case for the question of basic fairness; the

First Circuit has so held. In *Boston College II*, the First Circuit emphasized the need to proceed

cautiously in applying state law in light of Justice Brandeis' conception of the state as "a

laboratory [for] social and economic experiments." *Id.* at 535 (quoting *New State Ice Co. v.

Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting)). The First Circuit went on to

"give particular respect to state regulation of education" and conclude that "[w]hether

Massachusetts in the future will wish to redefine the requirements of contractual basic fairness in

college and university discipline matters poses important policy choices for the Supreme Judicial Court and/or state legislature to make." *Id.* at 535-36. Because most lawsuits by students accused of sexual misconduct include federal claims under Title IX, proceeding in state court is often not a realistic possibility, yet without giving the state courts an opportunity to weigh in, jurisprudential development is stuck. Certifying these issues to the SJC would give it the opportunity to assess the implications of basic fairness in the context of over two decades of societal change and experience, and provide much-needed clarity to students and universities.

        d.   <u>The Requested Questions Would Assist the Court in Resolving the Key Issues of State Law Implicated in Counts I and II</u>

Plaintiff has suggested four possible questions that would shed light on potentially determinative legal issues for his state-law claims. The first two address specific questions at issue in this case – whether basic fairness in a case of alleged sexual misconduct permits assessment of credibility solely on a written record, and whether a university can provide basic fairness while failing to comply with applicable law (as most relevant to this case, federal regulations under the Clery Act). The third invites the SJC to provide a general explanation of the requirements of basic fairness so that this Court can assess the evidence with full information. And the fourth seeks the SJC's guidance on all aspects of basic fairness as applied to this case, to the extent that other aspects of the facts may implicate issues of basic fairness. Doe invites this Court to certify all four questions, or a subset thereof; it is possible that one or two of the questions would be sufficient for the SJC to clarify the state-law issues relevant to Counts I and II. And of course, the Court has discretion to reformulate the questions or to certify questions *sua sponte*. *See Easthampton Sav. Bank*, 736 F.3d at 50 n.4.

## CONCLUSION

For the foregoing reasons, Doe respectfully requests that this Honorable Court grant his Motion to Certify Questions of Law to the Massachusetts Supreme Judicial Court and order one or more of the requested questions be certified to that court, and grant such other and further relief as may be just and equitable. Doe requests to be heard at oral argument at the hearing on Defendant's Motion for Summary Judgment, currently scheduled for October 27, 2021, in the event that the Court deems it helpful to the consideration of this Motion.

Date: September 30, 2021

Respectfully submitted,

/s/David A. Russcol_____
Ruth O'Meara-Costello (BBO No. 667566)
David A. Russcol (BBO No. 670768)
ZALKIND DUNCAN & BERNSTEIN LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020 (telephone)
(617) 742-3269 (fax)
rcostello@zalkindlaw.com
drusscol@zalkindlaw.com
*Attorneys for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served on all counsel of record through the ECF system on the above date.

/s/David A. Russcol_____